No. 95-3125

James C. Webb,                         *
                                       *
                    Appellant,         *
                                       *  Appeal from the United States
            v.                         *  District Court for the
                                       *  District of Minnesota.
Garelick Manufacturing Co.;            *
                                       *
                    Appellees.         *
                                       *
Saul Garelick, individually.          *


                    Submitted:  June 13, 1996

                    Filed:  August 29, 1996


Before BOWMAN and HEANEY, Circuit Judges, and BOGUE,[*] District
    Judge.


HEANEY, Circuit Judge.


    James C. Webb appeals the district court's grant of summary judgment
in favor of his employer, Garelick Manufacturing Company ("Garelick").  The
district court held that Webb was not disabled within the meaning of the
Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and that
Webb's affidavit opposing summary judgment was inadmissible to raise issues
of material fact.  We reverse and remand.


_____

    [*]The Honorable Andrew W. Bogue, United States District Judge
for the District of South Dakota, sitting by designation.

I.

On appeal from a summary judgment, we review the record in the light most favorable to the non-moving party. <u>Aucutt v. Six Flags Over Mid-America, Inc.</u>, 85 F.3d 1311, 1315 (8th Cir. 1996). Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the non-moving party alleging discrimination. <u>Crawford v. Runyon</u>, 37 F.3d 1338, 1341 (8th Cir. 1994).

Webb had been employed by Garelick Manufacturing Co. for the vast majority of his professional life. He began work as an assistant office manager with Garelick in January 1968. In 1980, Webb was promoted to the management position of Director of Purchasing. He remained at this position until his termination in October 1992. As Director of Purchasing, Webb's responsibilities included supervision of the purchasing department, upgrading the computer system, and production development. All of Webb's duties involved significant amounts of writing and typing.

In 1980, Webb began to experience pain and cramping in his right hand after writing for long periods of time. He first sought medical attention for this condition in 1982. His symptoms escalated over the next several years. Starting in 1986, Webb gradually switched to writing with his left hand. He was using his left hand exclusively by August 1988.

In March 1990, the condition in Webb's right hand was diagnosed as focal dystonia, a untreatable, severe condition that is aggravated and accelerated by writing and other repetitive, precision hand motions. Between 1988 and 1992, Webb gradually developed similar symptoms in his left hand. By 1991, Webb was experiencing intense pain in either hand when writing or typing. Webb first informed Garelick of his condition at the time of his

initial difficulties and kept his employer updated as the condition progressed.

In April 1992, after consultation with his doctor, Webb began using saved vacation time to reduce the number of days he worked. Reducing his hand motion had proven to be the only effective method to manage Webb's pain. Garelick informed Webb that a reduced work schedule was not a viable long-term solution. Webb then suggested to his supervisor that the company provide Webb with a tape recorder and transcription services to eliminate some of the writing involved in his job. He also requested that the company bring in an occupational therapist to evaluate his work space and work procedures. Garelick took no action in response to Webb's request and Webb continued to use vacation time to reduce his work week until September 1992, when his doctor completely prohibited him from writing and limited him to only small amounts of typing. Webb informed his supervisor of these additional restrictions, again expecting that his employer would arrange some type of accommodation. Instead, Webb was instructed to go home and informed that his supervisor would contact him after he had devised a plan. Garelick then sent Webb to a company physician who concurred with the diagnoses of his treating physicians and recommended an occupational therapist review Webb's work station for accommodation. No professional work-station review was ever made.

On October 6, 1992, the company called Webb back to work. That morning, Garelick supplied Webb with a tape recorder for the first time. Two hours later Garelick fired Webb, explaining that his dismissal was based on his inability to perform the essential functions of his job. Prior to 1991, when Webb's condition had progressed to both of his hands, Webb had always received excellent performance evaluations.

Webb commenced this action under the ADA alleging that he was a disabled person qualified to perform his job with reasonable accommodation and that Garelick had fired him because of his disability.  Garelick moved for summary judgment and the district court granted Garelick's motion.  On appeal, Webb primarily challenges the district court's ruling that he was not disabled because he was capable of performing other jobs.  He also challenges the court's refusal to consider his opposing affidavit because the court found that the affidavit contradicted Webb's previous deposition testimony.

II.

A. Disability under the ADA

A plaintiff seeking relief under the ADA must establish that (1) she is disabled within the meaning of the Act; (2) she is qualified to perform the essential functions of her job; and (3) that she was terminated because of the disability.  42 U.S.C. § 12112(a).  The district court held that Webb was not disabled, thus ending its inquiry at the first step of the analysis.  The court based its decision on the fact that Webb's impairment did not prevent him from working in other occupations in the general labor pool.  It noted that Webb's impairment only precluded him from those occupations involving handwriting and other repetitive hand motions.  We are troubled by the court's characterization of the ADA's disability standard.  In its sweeping holding, the district court suggests that a plaintiff can never demonstrate disability as long as there is any other job that she can perform.

The purpose of the ADA is broad and remedial:  It is designed to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The Act defines disability, in relevant part, as "a physical or mental impairment

-4-

that substantially limits one or more of [a person's] major life activities ...." 42 U.S.C. § 12102(2)(A). According to the Equal Employment Opportunity Commission ("EEOC") regulations, work is a major life activity. 29 C.F.R. § 1630.2(i). A person is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

Under this broad definition of substantial limitation, an ADA plaintiff need not demonstrate that her impairment restricts her ability to perform all jobs. Rather, as the EEOC's interpretive guide to the Act illustrates, an individual is disabled when her impairment merely prevents performance of a certain class of jobs. For example:

> [A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs.

26 C.F.R. Pt. 1630.2(j)(ii). Similarly, a person who has an allergy to a substance found in most high-rise office buildings, but seldom found elsewhere, is substantially limited in working because of her inability to perform the broad range of jobs in various classes that are conducted in high-rise office buildings. 26 C.F.R. Pt. 1630.2(j)(ii). Our court has applied this definition of substantial limitation in holding that an ADA plaintiff was not disabled when he failed to establish restriction from performing a class of jobs. See Aucutt, 85 F.3d at 1319 (difficulty performing obstacle course at a single work place not sufficient to show security guard was substantially limited in working as a security guard generally); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th

–5–

Cir. 1955) (plaintiff's impairments, which only appeared to prevent him from performing a narrow range of meatpacking jobs, not considered a substantial limitation). Other circuits also follow this approach. See Gupton v. Commonwealth of Virginia, 14 F.3d 203, 205 (4th Cir.) (plaintiff must demonstrate that smoke allergy foreclosed employment opportunities in her field rather than in only one work place to demonstrate substantial limitation in her ability to work), cert. denied, 115 S. Ct. 59 (1994); Byrne v. Board of Educ., School of West Allis, 979 F.2d 560, 566 (7th Cir. 1992) (teacher with allergy to fungus found only in two schools could not demonstrate substantial limitation in working because individual could still teach in other schools).

A person's expertise, background, and job expectations are relevant factors in defining the class of jobs used to determine whether an individual is disabled. Jasany v. United States Postal Service 755 F.2d 1244, 1249 (6th Cir. 1985); see also 29 C.F.R. § 1630.2(j)(3)(ii) (listing factors to be considered in determining whether an individual is substantially limited in working, including the job from which the individual has been disqualified and the skills used in that job). For example, in Maulding v. Sullivan, 961 F.2d 694, 698 (8th Cir. 1992), cert. denied, 507 U.S. 910 (1993), we held that a chemist who had spent much more of her career doing theoretical research than laboratory research was not substantially limited in working because of an allergy to chemicals used in a laboratory. Despite her limitation, she was still able to perform the work in her area of expertise. Similarly, in deciding whether an individual with a masters degree in business administration was substantially limited by an impairment that precluded her from performing an administrative job, the Second Circuit considered the class of jobs requiring such expertise. Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 724 (2d Cir. 1994), cert. denied, 115 S. Ct. 1095 (1995) (determining that employee's inability to serve as an administrator at one site that aggravated her asthma did not constitute a substantial limitation, because she

would not be limited from the class of administrative jobs in other locations).

Fundamentally, the ADA is concerned with preventing substantial personal hardship in the form of significant reduction in a person's real work opportunities. A court must ask "whether the particular impairment constitutes for the particular person a significant barrier to employment." Forrisi v. Bowen 794 F.2d 931, 933 (4th Cir. 1986); see also, Homeyer v. Stanley Tulchin Assocs, Inc., No. 95-3977, 1996 WL 428030, at *3, (7th Cir. 1996) (district court failed to "undertake a meaningful analysis" of the individual's particular situation). In this case, the district court did not conduct the necessary, individualized assessment of the extent to which Webb's hand condition limited his meaningful opportunities for employment. The court should have determined what class of jobs was relevant for its disability analysis with respect to Webb, taking into consideration the job from which Webb was fired and the specialized skills that he developed in his twenty-four years with Garelick. The court also should have considered whether Webb was significantly restricted in his ability to perform that class of jobs as compared to the average person with his supervision and production development skills. If the court determines that Webb has been so restricted, then Webb is disabled within the meaning of the ADA.

We therefore reverse the district court's grant of summary judgment and remand to the district court to make a determination of disability consistent with this opinion. If the court finds that Webb is disabled, then it must decide whether Webb is entitled to relief under the ADA, by considering whether Webb is qualified to perform the essential functions of his job with accommodation, and whether he was terminated because of his disability.

B. Webb's Affidavit

With respect to Webb's affidavit, we hold that the district court should consider the affidavit for the purposes of Garelick's summary judgment motion. Under Rule 56(c) of the Federal Rules of Civil Procedure, a court is required to consider an otherwise admissible affidavit, unless that affidavit contradicts deposition testimony. See Camfield Tires, Inc. v. Michelin Tire Corporation 719 F.2d 1361 (1983) (affidavit that contradicts earlier deposition testimony without explanation may not be used to create material issue of fact). We have reviewed the record and find that the affidavit submitted by Webb does not contradict the testimony he gave in his deposition. The vast majority of Webb's affidavit simply restates information already contained in his deposition testimony or elsewhere in the record. The few remaining statements either elaborate on information that Webb already conveyed or provide new information that does not contradict any of Webb's previous statements.

III.

Accordingly, we reverse the district court's grant of summary judgment to Garelick and remand for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-