211 F.Supp.2d 1120 (2002)
Lisa G. CAMERON, Plaintiff,
v.
MID-CONTINENT LIVESTOCK SUPPLEMENTS, INC., Defendant.
No. 201CV00078ERW.
United States District Court, E.D. Missouri, Northern Division.
June 27, 2002.
*1121 Pamela Lambert, Lambert Law Offices, Columbia, MO, for plaintiff.
James N. Foster, Jr., Robert D. Younger, McMahon and Berger, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court upon Defendant's Motion for Summary Judgment [doc. # 15].

I. STATEMENT OF FACTS
From September 13, 1999 through November 12, 1999, Plaintiff was employed by Defendant as a laborer at its facility in Randolph County, Missouri. Plaintiff alleges that "[a]t various times during [her] employment she was subjected to unwelcome verbal and physical sexual harassment by co-workers." She was allegedly "obliged to work in an atmosphere ... hostile to females by virtue of unsolicited sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature." Plaintiff states that Defendant *1122 discriminated against Plaintiff because of her sex, in violation of Title VII of the Civil Rights Act of 1964, by permitting harassment and a hostile work environment to exist, doing nothing to remedy the situation, retaliating against Plaintiff for protesting, and eventually constructively and actually discharging Plaintiff from her position.
In addition to the Title VII claim, Plaintiff also brings state common law battery and intentional infliction of emotional distress claims. On the battery claim, Plaintiff alleges that one of her co-workers intentionally dropped "a heavy dock plate on her foot causing injuries to [her]." On her claim for intentional infliction of emotional distress, Plaintiff contends that Defendant's conduct "was either intended to cause ... or was perpetrated with a reckless indifference to the likelihood that it would cause such distress."
For summary judgment on Plaintiff's Title VII claims, Defendant argues that there is no genuine dispute of material fact that it does not meet the statutory definition of "employer" and therefore is not subject to liability for sex discrimination under Title VII. Defendant asserts that in the course of its operations, Defendant employed fifteen or more employees[1] for nine weeks in 1998[2] and sixteen weeks in 1999.[3] Defendant also owns two independent *1123 subsidiaries: one located in North Dakota (Mid-Continent Livestock Supplements of Dakota, Inc.) and one in Texas (Mid-Continent Livestock Supplements of Texas, Inc.); however, Defendant claims the subsidiaries are not sufficiently controlled by Defendant to be considered its employees. Defendant also seeks dismissal of Plaintiff's state common law claims of battery and intentional infliction of emotional distress alleging that they are more properly heard in state court.
Plaintiff opposes summary judgment, stating that there is a dispute as to the number of employees employed by Defendant in 1998 and 1999. Plaintiff asserts that Defendants payroll records are inaccurate, they omit Joseph Orwig's wife as an employee of Defendant, and they do not account for the employees of Defendant's subsidiaries.

II. SUMMARY JUDGMENT STANDARD
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Dammen v. UniMed Medical Center, 236 F.3d 978, 980 (8th Cir.2001) (stating that "summary judgment will be granted if `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law'"). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).
"`[B]y its very terms, [Rule 56(c)(1)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact.'" Hufsmith v. Weaver, 817 F.2d 455, 460 n. 7 (8th Cir.1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added by the Supreme Court)). Material facts are "those `that might affect the outcome of the suit under the governing law....'" Hufsmith, 817 F.2d at 460 n.7 (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). A genuine material fact is one such that "`a reasonable jury could return a verdict for the nonmoving party.'" Id. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *1124 Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Hutson v. McDonnell-Douglas Corp., 63 F.3d 771, 775 (8th Cir.1995). The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir.2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.
If affidavits are relied on, the affidavits must comply with Federal Rule of Civil Procedure 56(e), which provides that "supporting or opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). "[A]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. University of Minnesota, 60 F.3d 423, 428 (8th Cir.1995). Statements in an affidavit which are not based on personal knowledge and which are "unaccompanied by facts which would be admissible in evidence" are properly disregarded by a court as insufficient to raise a genuine issue of fact. See Neff v. World Publishing Co., 349 F.2d 235, 254 (8th Cir.1965) (disregarding relevant portions of the plaintiff's affidavit as "totally unsupported by the record and based upon matters beyond his personal knowledge, constituting his conclusions or based upon his interpretation of written documents").

III. TITLE VII CLAIMS
Before reaching the merits of a Title VII claim, the Court must first determine if the defendant in question is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and is therefore subject to Title VII liability. In order to be an "employer," a defendant must be a business "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Under Title VII, "current" year is the calendar year in which the alleged acts occurred and "preceding" year is the calendar year immediately prior. See Walters v. Metropolitan Educational Enter., Inc., 519 U.S. 202, 205, 117 S.Ct. 660, 136 L.Ed.2d 644 n.* (1997).
For counting purposes and to ease the discovery burden, the United States Supreme Court has endorsed the *1125 "payroll method" for counting employees. Walters, 519 U.S. at 206, 117 S.Ct. 660. This method simply asks if an individual is on the payroll for a particular day in question. If so, the individual is considered an employee for that particular day, regardless of whether that person actually worked or was compensated for that day. Id. For purposes of the statute, an individual is counted as an employee for all working days between the starting date and ending date of his employment. Id. at 211, 117 S.Ct. 660. An individual counts toward the calendar week and the fifteen-employee minimum only if that employee is on the payroll for every working day in a calendar week; employees who start or end in the middle of a week do not count toward the minimum for that particular week. Id. at 209, 117 S.Ct. 660.
A parent and its subsidiaries may be consolidated for counting purposes. However, the Eighth Circuit examines four factors when determining if it is proper to consolidate legally separate subsidiaries for this purpose: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. See Baker v. Stuart Broadcasting Co., 560 F.2d 389, 392 (8th Cir.1977). Common ownership alone is insufficient to justify consolidation for counting purposes. See, e.g., Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir.1993) (holding that only one common manager, no unified day-to-day operational control, and common ownership is insufficient to establish interrelation needed to consolidate); Sedlacek v. Hach, 752 F.2d 333, 334-36 (8th Cir.1985) (holding that two companies that shared employees, management, equipment, location, and employee benefit programs in addition to near total common ownership produces "substantial identity" needed to consolidate for counting purposes under § 2000e(b)). The Court will only consolidate a parent with its subsidiaries upon a finding of "substantial identity" based on the presence of some or all of the four factors. Sedlacek, at 336.
The Eighth Circuit has deemed the fifteen-employee minimum a jurisdictional prerequisite.[4]See Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391 (8th Cir.1977). See also Daggitt v. United Food and Commercial Workers Intern. Union, Local 304A, 245 F.3d 981, 990 (8th Cir.2001) (holding that "union stewards [were] `employees' of the union for purposes of establishing jurisdiction ... under 42 U.S.C. § 2000e(b)"); Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 80 (8th Cir.1996); Whites v. Hahn, 699 F.Supp. 206, 207 (E.D.Mo.1988); Massey v. Emergency Assistance, Inc., 580 F.Supp. 937, 938-39 (W.D.Mo.1983), aff'd 724 F.2d 690 (8th Cir.1984). As a jurisdictional prerequisite, the burden is on Plaintiff to allege and, if necessary, provide evidence to positively establish the court's subject matter jurisdiction. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).
In the present case, the relevant years for the fifteen employee minimum are 1998 and 1999 because the alleged acts *1126 occurred in 1999. The evidence submitted in support of Defendant's Motion for Summary Judgment shows that Defendant did not employ fifteen or more employees for more than twenty calendar weeks in either year. Only by consolidating Defendant with its subsidiaries could the requirement be met. However, Plaintiff has failed to set forth evidence indicating that the subsidiaries' operations are interrelated with the Defendant's operation, that the management is common, or that there is central control of the labor relations. The common ownership between Defendant and its subsidiaries is insufficient for the Court to find substantial identity and include the subsidiaries employees as employees of Defendant for counting purposes. See Frank, 3 F.3d at 1364. Thus, the employees of the subsidiaries, including Steven Orwig, Defendant's part-owner, do not count toward the fifteen employee minimum.
In further opposition to summary judgment, Plaintiff argues that a genuine dispute of material fact exists because Marcie Orwig, Steven Orwig's wife, is omitted from Defendant's payroll records. See EEOC v. Pettegrove Truck Service, Inc. 716 F.Supp. 1430, 1433 (S.D.Fla.1989) (holding that family members who did not appear on the payroll were "employees" for counting purposes because there was evidence that they performed traditional employee duties). The only evidence presented by Plaintiff in support of her argument is Plaintiff's affidavit. The affidavit states in general terms that Marcie Orwig was an employee of Defendant; however, it does not set forth when Marcie Orwig was employed by Defendant, what duties Marcie Orwig performed, or how such information is within Plaintiff's personal knowledge. An affidavit that is not based upon personal knowledge does not properly oppose a summary judgment motion in accordance with Rule 56(e). Therefore, the Court disregards Plaintiff's assertion.
Second, Plaintiff alleges that Defendant's payroll records do not accurately reflect the duration of Larry Walker's employment.[5] Therefore, Plaintiff contends that a genuine dispute exists as to the number of employees employed by Defendant and summary judgment should be denied. Again, Plaintiff provides nothing more than an assertion on this point, without any indication as to how such an assertion is based on her personal knowledge. In fact, since Plaintiff did not begin employment until after Mr. Walker's employment began, it is difficult to imagine exactly how she has personal knowledge on this matter. As such, the Court disregards Plaintiff's assertion because it does not meet the Rule 56 standards for opposing summary judgment, and the Court accepts as accurate the duration of Mr. Walker's employment as shown by the evidence.
Finally, Plaintiff alleges that Defendant's payroll information is generally inaccurate. Plaintiff bases this allegation on the apparent lack of data for Ray Orwig after Sept. 13, 1999, in Defendant's original documentation, as compared with Defendant's admission that Ray Orwig was employed until after December 31, 1999. However, in Joseph Orwig's second affidavit, Mr. Orwig avers that Defendant used two different payroll systems between Jan. 1, 1998, and Dec. 31, 1999. The documentation attached both to Defendant's Exhibit A and C supports this averment since the printouts appear in two different formats. The "gap" in the record for Ray Orwig has been filled by the documentation *1127 attached to Joseph Orwig's second affidavit. This evidence, the only direct evidence before the Court on this matter, shows that there is no gap in Defendant's payroll records; thus, there is no evidence before the Court raising doubts as to the accuracy of those records.
Even if the Court had reasons to doubt Defendant's payroll evidence, that doubt would be insufficient to fulfill the fifteen-employee minimum and establish subject matter jurisdiction under 42 U.S.C. § 2000e(b). It is Plaintiff's burden to establish jurisdiction. See FW/PBS, Inc., 493 U.S. at 231, 110 S.Ct. 596. Here, Plaintiff has done nothing more than raise speculation as to the accuracy of Defendant's evidence. Plaintiff has not produced any evidence, except her own affidavit which the Court disregards under Rule 56(e), because it fails to include "factual support to show that the affiant possesses [the] knowledge," to make the assertions she does. As a result, the Court finds that Defendant is not subject to Title VII liability because it does not meet the fifteen-employee minimum of 42 U.S.C. § 2000e(b). Thus, the Court lacks subject matter jurisdiction over the putative Title VII claim.

IV. STATE LAW CLAIMS
The federal courts are courts of limited jurisdiction. See Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1141 (8th Cir. 1998). The Court may "only exercise jurisdiction where Congress sees fit to allow it." Southwestern Bell Tel. Co. v. Connect Comm. Corp., 225 F.3d 942, 945 (8th Cir. 2000). In this case, jurisdiction over the Title VII claim is allegedly based on 28 U.S.C. § 1337, 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 2000e-5(f). Jurisdiction over the two state common law tort claims of battery and emotional distress is allegedly based on supplemental jurisdiction. See 28 U.S.C. § 1367.
The Court "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). State law claims are more properly heard by state courts, while federal district courts should "exercise judicial restraint and avoid state law issues wherever possible." Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990). See also Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir.2000) (holding that a court must decline jurisdiction over state law claims absent original jurisdiction over a related claim). As discussed above, Plaintiff's Title VII claim is dismissed for lack of subject matter jurisdiction. The Court believes it is appropriate to decline subject matter jurisdiction over Plaintiff's state law battery and intentional infliction of emotional distress claims.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [doc. # 15] is GRANTED.
IT IS FURTHER ORDERED that any additional pending motions in this action are DENIED as moot.
NOTES
[1] Defendant omits from its calculations employees that were not employed for a calendar week's worth of working days. These employees are: Carl Clay (Nov. 24, 1998Nov. 24, 1998 employment; 1 working day), Doris Mutter (Mar. 3, 1999Mar. 5, 1999 employment; 3 working days), Travis Garven (July 29, 1999Aug. 4, 1999 employment; 2 working days July 26July 30, 3 working days Aug. 2Aug. 4), Brandon Wendt (Dec. 14, 1999Dec. 15, 1999 employment; 2 working days), and David Dodd (Dec. 20, 1999Dec. 20, 1999 employment; 1 working day).
[2] Defendant employed sixteen employees for weeks 22 and 23 (May 31, 1998 to June 13, 1998) and fifteen employees for weeks 24 through 30 (June 14, 1998 to August 1, 1998). For weeks 22 and 23, Defendant employed Joseph Orwig, Neal Brunkhorst, Jean Orwig, Dinah Coles, Bruce Rudder, Steve Miller, Jeff Major, Jack Mercer, Paul Orwig, David West, James Perkins, Mark Hibbs, Kelee Barnes, Robert Green, Allen Cummings, and Robert Cummings, for a total of sixteen employees. For weeks 24 through 26, Defendant employed those employed in weeks 22 and 23, save Robert Green, for a total of fifteen employees. For weeks 27 through 30, Defendant employed those employed in weeks 24 through 26, plus Larry Buhmann, minus Jeff Major, for a total of fifteen employees. See Def. Ex. A [doc. # 15].
[3] Defendant employed sixteen employees for weeks 37, 38, 41, 42, 43, and 48 (Sept. 12, 1999 to Sept. 25, 1999; Oct. 10, 1999 to Oct. 30, 1999; Nov. 28, 1999 to Dec. 4, 1999), fifteen employees for weeks 39 and 40 (Sept. 26, 1999 to Oct. 9, 1999), seventeen employees for weeks 44, 46, 47, 49, 50, 51, and 52 (Oct. 31, 1999 to Nov. 6, 1999; Nov. 14, 1999 to Nov. 27, 1999; Dec. 5, 1999 to Dec. 31, 1999), and eighteen employees in week 45 (Nov. 7, 1999 to Nov. 13, 1999). For weeks 37 and 38, Defendant employed Joseph Orwig, Neal Brunkhorst, Jean Orwig, Dinah Coles, Bruce Rudder, Steve Miller, Larry Buhmann, Dave Linhart, Larry Coles, Lisa Trusty, Raymond Orwig, Brad Willoughby, Kenneth Fox, Charles "Greg" Riley, Larry Walker, and Lisa Cameron, for a total of sixteen employees. For weeks 39 and 40, Defendant employed all those employed in weeks 37 and 38, except Charles "Greg" Riley, for a total of fifteen. For weeks 41 and 42, Defendant employed all those employed in weeks 39 and 40, plus Joseph Kingery, for a total of sixteen employees. For week 43, Defendant employed all those employed in weeks 41 and 42, except Larry Walker, plus Christopher Huff, for a total of sixteen employees. For week 44, Defendant employed all those employed in week 43, plus Earnest Goff, for a total of seventeen employees. For week 45, Defendant employed all those employed in week 44, plus Charla Norton, for a total of eighteen. For weeks 46 and 47, Defendant employed all those employed in week 45, except Lisa Cameron, for a total of seventeen employees. For week 48, Defendant employed all those employed in weeks 46 and 47, except Christopher Huff and Earnest Goff, plus Jason Fuemmeler, for a total of sixteen employees. For week 49, Defendant employed all those employed in week 48, except Larry Coles, plus Scott McCawley and Michael Prewit, for a total of seventeen employees. For week 50, Defendant employed all those employed in week 49, except Michael Prewit, plus Eric Cook, for a total of seventeen employees. For weeks 51 and 52, Defendant employed all those employed in week 50, except Eric Cook, plus Matt Fuemmeler, for a total of seventeen employees. See Def. Ex. A [doc. # 15].
[4] In most, but not all circuits, the minimum is a jurisdictional prerequisite. See Hukill v. Auto Care, Inc., 192 F.3d 437, 441-42 (4th Cir.1999); Scarfo v. Ginsberg, 175 F.3d 957, 961 (11th Cir.1999); Greenlees v. Eidenmuller Enterprises, Inc., 32 F.3d 197, 198 (5th Cir. 1994); Childs v. Local 18, IBEW, 719 F.2d 1379, 1382 (9th Cir.1983); Armbruster v. Ouinn, 711 F.2d 1332, 1335 (6th Cir.1983). But see Da Silva v. Kinsho International Corp., 229 F.3d 358 (2d Cir.2000); Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir.1999); EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621 (D.C.Cir.1997) (holding that the fifteen employee minimum is a question on the merits, not a jurisdictional prerequisite).
[5] Sept. 8, 1999Oct. 22, 1999 employment; weeks 37 to 42. See Def. Ex. A ¶ 102, attachments 30, 43, and 45 [doc. # 15].